TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00713-CV







Dorothy Sanders, Appellant



v.



Joe M. Kelly, Jr. and Laura Kelly, Appellees







FROM THE DISTRICT COURT OF CALDWELL COUNTY, 274TH JUDICIAL DISTRICT


NO. 92-0-202, HONORABLE VIC HALL, JUDGE PRESIDING







PER CURIAM


 Appellant Dorothy Sanders owns a narrow strip of land that is subject to an
easement owned by appellees Joe M. Kelly, Jr. and Laura Kelly. Sanders challenges the trial
court's grant of a permanent injunction that prohibits her building a gate or other obstruction
across the property. (1) We will affirm the trial court's judgment.

Facts


 On December 30, 1985, Joe and Laura Kelly conveyed to Bimms Investments
("Bimms") by warranty deed a 60-foot wide, 2.03-acre strip of land. The deed reserved an
easement on the property conveyed. The 60-foot wide strip of property was to be used as access
to a development Bimms planned to build on a 171-acre tract acquired from Sanders.

 Due to financial problems, Bimms did not develop the property. On October 5,
1990, Bimms deeded the tract covered by the easement to Sanders because he owed her money. 
Sanders also regained ownership of the 171-acre tract. The 60-foot wide tract, the subject of this
appeal, is Sanders' only access to the larger tract. 



Standard of Review


 Sanders brings two points of error, both of which challenge the sufficiency of the
evidence supporting the grant of the injunction. The standard for reviewing the grant of a
permanent injunction is whether the trial court abused its discretion. Morris v. Collins, 881
S.W.2d 138, 139-40 (Tex. App.--Houston [1st Dist.] 1994, writ denied); Risk Managers Int'l, Inc.
v. State, 858 S.W.2d 567, 569-70 (Tex. App.--Austin 1993, writ denied). The test for abuse of
discretion is whether the trial court acted without reference to any guiding rules or principles or
whether it acted in an arbitrary or unreasonable manner. Worford v. Stamper, 801 S.W.2d 108,
109 (Tex. 1990). Legal and factual sufficiency claims are not independent grounds of error but
are relevant factors in determining whether the court abused its discretion. In re Pecht, 874
S.W.2d 797, 800 (Tex. App.--Texarkana 1994, no writ). No abuse of discretion occurred if
substantial probative evidence supports the decision. Morris, 881 S.W.2d at 140; Grubaugh v.
Texas Employers' Ins. Ass'n, 677 S.W.2d 812, 814 (Tex. App.--Fort Worth 1984, writ dism'd). 
 

 Further, the record does not contain the trial court's findings of fact, nor is there
any indication that Sanders requested them. In the absence of findings of fact, the judgment
implies all necessary findings of fact to support it, provided that the implied findings are raised
by the pleadings and supported by the evidence. Worford, 801 S.W.2d at 109. In considering
whether the judgment and implied findings are supported by evidence, it is proper to consider only
the evidence favorable to the judgment and to disregard all contrary evidence. Id.; Austin Area
Teachers Fed. Credit Union v. First City Bank - Northwest Hills, N.A., 825 S.W.2d 795, 801
(Tex. App.--Austin 1992, writ denied). We will affirm the trial court's judgment if it can be
upheld on any legal theory supported by evidence. Worford, 801 S.W.2d at 109; In re W.E.R.,
669 S.W.2d 716, 717 (Tex. 1984).



Analysis


 By points of error one and two, Dorothy Sanders argues that the trial court erred
in construing the easement as preventing her from placing any obstruction on the 60-foot wide
strip of property because the evidence shows that a gate on the property would not violate the
terms of the easement and that the injunction exceeds the scope of the terms of the easement. (2) We
will consider both points together.



A. Whether a Gate is Appropriate

 A servient estate cannot interfere with the right of the dominant estate to use an
easement for the purpose for which it was granted. Bickler v. Bickler, 403 S.W.2d 354, 359
(Tex. 1966). Any use by others that interferes with the exercise of superior easement rights must
yield. Pittman v. City of Amarillo, 598 S.W.2d 941, 944 (Tex. Civ. App.--Amarillo 1980, writ
ref'd n.r.e.).

 Whether a servient landowner may erect a gate on property burdened by an
easement depends upon the intent of the parties who created the easement. McDaniel v. Calvert,
Jr., 875 S.W.2d 482, 485 (Tex. App.--Fort Worth 1994, no writ). The parties' intent can be
determined by considering the terms of the grant or reservation creating the easement, its purpose,
the nature and situation of the property, and the manner in which the property is used. Id.; Burns
v. McDaniel, 158 S.W.2d 826, 827 (Tex. Civ. App.--Eastland 1942, no writ). Additionally,
courts may infer the parties' intent from circumstances existing at the time of grant. Gerstner v.
Wilhelm, 584 S.W.2d 955, 958 (Tex. Civ. App.--Austin 1979, writ dism'd). We will consider the
application of those factors here.



 1. Terms of Reservation

 The terms of the reservation read:



SAVE AND EXCEPT, and there is hereby excepted and reserved unto Grantors,
their heirs and assigns, a 60 foot strip of land, out of the property hereby
conveyed, the free and uninterrupted use, liberty and easement of passing in and
along a certain passage or roadway across the said premises, and being a total of
60 feet in width and to use such passageway or road at all times in common with
Grantee, its successors and assigns, and more particularly described by metes and
bounds as follows . . . .



(Emphasis added.) The reservation then described the 2.03 acre plot.

 Because a gate is neither explicitly prohibited nor permitted by deed, the question
becomes whether other considerations prohibit or permit it. See, e.g., Gerstner, 584 S.W.2d at
958 (conditions surrounding similarly-worded reservation supported court's construction that
dominant owners were to have way free of gates and fences).



 2. Purposes of Reservation 

 The purpose of the reservation was to allow the Kellys free and uninterrupted
access to their land. The purpose of the conveyance of the fee to Bimms was to afford Bimms
access to its planned development. Joe Kelly testified that Bimms planned to build a 60-foot wide
road on the property he deeded. Because Bimms planned to build a 60-foot wide road that would
serve as general access to the development, the trial court could have found that no gate was
contemplated by the parties. 



 3. Circumstances Existing at Time of Grant

 The current road, which the Kellys built, existed at the time they conveyed the
property to Bimms. Also at that time, a metal cattleguard and gate barred public access from
Highway 183. (3) Sanders asserts that the existence of the gate at the time the easement was
reserved implies that a gate was contemplated by the parties. However, since the Kellys owned
the property at that time, they would have controlled when the gate was shut and locked rather
than having the gate shut and locked at another's convenience. Also, as discussed above, Bimms
was to build a 60-foot wide road on the property. Contrary to Sanders' assertion, the presence
of a gate at the time the easement was reserved does not require a finding that a gate was
contemplated by the parties. But see McDaniel, 875 S.W.2d at 485 (evident that access should
be unobstructed since no gates existed at time of grant).



 4. Nature and situation of the property

 Sanders testified that she needed the gate to prevent the general public from
accessing her land and to prevent littering and dumping on her property. The entrance is across
the highway from a bar and Sanders testified that the bar's patrons parked and walked on her
road. Conversely, Joe Kelly testified that the gate would inconvenience him because if friends
visited they would have to get out to open it if it were unlocked, and if it were locked, he would
have to meet them. 

 The question of whether the servient landowner may lock a gate and furnish the
easement holder with keys is a fact issue for the trial judge to resolve. Carleton v. Dierks, 203
S.W.2d 552, 556 (Tex. Civ. App.--Austin 1947, no writ). Ordinarily locked gates across a way
constitute an unreasonable burden which will not be permitted, even if the easement holder is
given a key. Id. But, under certain circumstances, locked gates may be permitted. Id. 

 In Carleton, the servient land owner testified that he needed a locked gate because
he had lost about 100 head of sheep and goats in three months and he suspected that they had been
stolen. The easement holder testified that locking the gates would seriously interfere with the use
of the road by members of their families, their visitors, and those who came to their ranches on
business. The Carleton court concluded that the servient land owner's testimony regarding
possible theft was not enough to overcome the fact finder's determination that the gate would
unreasonably interfere with the dominant owner's rights. (4)

 In this case, Sanders does not live on the property accessed by the road nor does
her property have any habitable dwelling thereon. The Kellys do live on the property accessed
by the road and would be inconvenienced in their daily lives by a locked gate. We cannot say,
as a matter of law, that the trial court's implied finding that the gate would unreasonably interfere
with the Kellys' rights is incorrect.

 Also, Sanders points out that the Kellys themselves have another entrance to their
property on Highway 183, which has a locked gate. The road, an alternate route to the Kellys'
home, can be used only in good weather. The existence of this gate shows that a locked gate may
be appropriate, but does not require a finding that a locked gate on the property in question was
contemplated by the parties.



 5. Manner in which property is used

 Next we consider the manner in which the property is used to decide whether under
the circumstances a gate is reasonable. The property is basically used as access to both the
Kellys' and Sanders' property. Sanders leases her larger tract to a local rancher; she testified that
she did not plan to raise cattle or grow hay on the narrow tract. The trial court could have
reasonably found that a gate would unreasonably impede access because that is the primary
purpose for which the narrow strip is used.

 After considering all applicable factors, we conclude that the trial court did not
abuse its discretion in preventing Sanders from building a gate on the property.



B. Whether the Injunction is Too Broad

 Finally, Sanders claims that the injunction is too broad because it covered the entire
2.03 acre tract of land rather than just the road that existed at the time the easement was created. 
She urges that the reservation is ambiguous or mistaken because it reserves an easement along a
"certain passage or roadway" but then describes the entire 60-foot wide strip of land. She cites
authority relating to easements arising from necessity or prescription for the proposition that the
easement should be only as broad as necessary to attain the purpose of the easement. And, since
the existing road is narrower than 60 feet, she suggests that the injunction should cover only the
existing road rather than the entire strip of land, or that the injunction should end where the road
leading to the Kellys' home turns away from the main road.

 However, the reservation is an express reservation rather than an easement arising
from necessity or prescription. As such, the owners of the dominant estate have the right to use
the entire land covered by the easement, not just the necessary portion. See Williams v.
Thompson, 256 S.W.2d 399, 403-05 (Tex. 1953) (easement holder had right to build 30 foot road
since that was the width of the express easement, rather than 18 feet that was allegedly sufficient
for his purposes); Lower Colorado River Auth. v. Ashby, 530 S.W.2d 628, 632-33 (Tex. Civ.
App.--Austin 1975, writ ref'd n.r.e.) (express easement that gave rights in excess of rights actually
used was valid notwithstanding the prior exercise of a lesser privilege); Pagenstecher v. Biasiolli,
267 S.W.2d 576, 577 (Tex. Civ. App.--San Antonio 1954, no writ) (when "the limits of a way are
defined . . . the grantee has the right of free passage not only over the traveled part, but also on
such portion of the way as he thinks proper and necessary."). The trial court did not err in
concluding that the reservation applies to the entire parcel of land since the deed expressly
reserved the entire 60-foot width.

 We overrule points of error one and two. The trial court's judgment is affirmed.


Before Justices Powers, Kidd and B. A. Smith

Affirmed

Filed: August 16, 1995

Do Not Publish

1.   The injunction reads:


IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Defendant
DOROTHY SANDERS be and hereby is commanded to desist and refrain from
any cause of action that contravenes Plaintiffs' right to free and uninterrupted use,
liberty and easement and passing in and along the 2.03 acres of land so described. 
This permanent injunction shall include the construction of gates, cattle guards,
fences, or other obstructions, on or to the 2.03 acres in question.
2.   Although the points of error address only the express terms of the easement, Sanders
develops the argument that the injunction violates not only the express but the implied terms of
the agreement.
3.   The metal cattleguard and gate were later moved, although the parties dispute when.
4.   The Kellys' claim that Burns v. McDaniel, 158 S.W.2d 826 (Tex. Civ. App.--Eastland
1942, no writ), and Egan v. Woddell, 720 S.W.2d 169 (Tex. App.--San Antonio 1986, writ
ref'd n.r.e.), control the disposition of this case. We disagree. Egan was an appeal from the
issuance of a temporary injunction and the goal was preservation of the status quo; the Egan
court did not reach the merits of whether an easement existed or whether a gate would
ultimately be allowed. And, in Burns, in which the court held that gates barring access should
be removed, the deed expressly reserved an easement for a public road. Burns, 158 S.W.2d at
826-27.