Opinion filed October 25,
2012

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-10-00310-CV

                                                    __________

 

                           TOM
AND MARIE McKENNA, Appellant

 

                                                             V.

 

                                 J.
DANIEL CALDWELL, Appellee



 

                                   On
Appeal from the 278th District Court

 

                                                           Walker
County, Texas

 

                                                      Trial
Court Cause No. 25035

 



 

                                                                  O
P I N I O N

            Tom
and Marie McKenna (McKenna) appeal the summary judgment entered in favor of J.
Daniel Caldwell (Caldwell) in a dispute over an express easement.  McKenna
argues that the trial court erred when it granted summary judgment because the
issue of whether the terms of the easement prohibit a gate or a cattle guard is
a question of fact that cannot be resolved by summary judgment.  Alternatively,
McKenna argues that the trial court granted greater relief than requested when
it ordered the removal of all gates from the easement and when it prohibited any
future obstructions across the easement.  Finally, McKenna complains that the
evidence was insufficient to support the award of attorney’s fees to Caldwell. 
We reverse and remand.

Background
Facts

Both
parties own real property that is located in the Alonzo Marsh Survey in Walker
County, Texas.  Through two separate conveyances, Caldwell and his brother,
George L. Caldwell, acquired 57.12 acres.  In the deeds of sale to the Caldwell
brothers, the grantors reserved a 40-foot access easement across the southern
boundary of the property.  That easement, though not at issue, is still in use
by another neighbor and Caldwell to cross McKenna’s property to the public road. 
Four years after the Caldwell brothers acquired the 57.12 acres, Caldwell
executed a partition deed in which he conveyed the southern half of the
property to George and Jo Ann Caldwell.  He reserved a 30-foot access easement
along the eastern border to provide access to his otherwise landlocked property. 
The partition deed contains the following language: 

This
conveyance is subject to an easement upon, over and across a thirty (30) foot
strip of land adjacent to the east boundary line of the South one-half (1/2) of
the above described 37.12 acres to be used in common with Grantor, his heirs
and assigns, for purposes of providing a perpetual free, uninterrupted and
unobstructed easement for access, ingress and egress to and from the north
one-half (1/2) of said 57.12 acres.

 

Seven years after
the partition, Jo Ann Caldwell, then a widow, deeded the southern half of the
original 57.12 acres to McKenna, subject to all existing recorded encumbrances.

Prior
to the date of the partition deed, and while the land was jointly owned by the
Caldwell brothers, McKenna used the southern parcel and raised cattle with Caldwell
on both tracts.  During the time that McKenna and Caldwell raised cattle
together, Caldwell installed a gate across the south end of the easement where it
met the 40-foot access easement that provided access to the public road.  McKenna
enclosed a portion of the southern half for use as a hay field.  A portion of
the hay field fence bordered a section of the easement.  When Caldwell stopped
raising cattle, McKenna installed a cattle guard and a gate across the northern
end of the easement where it meets Caldwell’s property.  The purpose was to
prevent McKenna’s cattle from roaming onto Caldwell’s land.  Caldwell stated that
the cattle guard and gate were never an issue because the gate was left open.

McKenna
originally filed suit seeking a declaratory judgment and an injunction
preventing Caldwell from leaving the gate open and from harming or destroying
the gate.   Caldwell also filed suit seeking a declaratory judgment and an
injunction preventing McKenna from obstructing the easement.  Caldwell also
asserted claims for trespass and negligence, requesting damages caused by the
trespass of McKenna’s cattle and damages resulting from Caldwell’s vehicle
hitting the gate.  The cases were consolidated by the trial court.  Caldwell
filed a motion for partial summary judgment, arguing that the terms of the
easement prohibited gates as a matter of law.

McKenna’s
summary judgment evidence showed that Caldwell filled in the cattle guard, requiring
McKenna to close the gate to prevent his cattle from roaming onto Caldwell’s
property.  The summary judgment evidence also showed that Caldwell’s vehicle
was damaged when he ran into the closed gate.

The
trial court granted partial summary judgment in favor of Caldwell, who
nonsuited his remaining claims.  Thus, the trial court’s order is final and
reviewable on appeal.  Ritzell v. Espeche, 87 S.W.3d 536, 538 (Tex.
2002).   

Standard
of Review

            We
review the trial court’s grant of summary judgment de novo, looking only to the
evidence presented to the trial court.  Provident Life & Accident Ins.
Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003).  When reviewing a summary
judgment, we take as true all evidence favorable to the nonmovant, indulging
every reasonable inference, and we resolve any doubts in the nonmovant’s
favor.  Id.  Any evidence favoring the moving party, Caldwell, will not
be considered unless it is uncontradicted.  Great Am. Reserve Ins. Co. v.
San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).

            Caldwell
filed a traditional motion for summary judgment, asserting that there were no
genuine issues of material fact.  In a traditional summary judgment motion, the
moving party has the burden of showing that there is no genuine issue of
material fact and that it is entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c); Knott,
128 S.W.3d at 215–16.  

Express
Easement

            In
the first point, McKenna asserts that the trial court erred when it granted
summary judgment in favor of Caldwell.  McKenna argues that a genuine issue of
material fact exists because the language of the easement does not specifically
address the use of gates or cattle guards.

            An
easement is a nonpossessory interest in land that authorizes its holder to use
the property for a particular purpose.  Marcus Cable Assocs., L.P. v. Krohn,
90 S.W.3d 697, 700 (Tex. 2002).  The holder or dominant estate may only make
such use of the easement as is “reasonably necessary[] to fairly enjoy the
rights expressly granted,” lest the easement effectively become a possessory
land interest.  Id. at 701.  When considering an express easement, we
look to the language reserving it to determine the scope of the easement.  Id.
at 700–01.  Applying basic principles of contract construction and
interpretation, we give the terms of the easement their plain and ordinary
meaning when they are not expressly defined.  Id. at 701.  We read the
terms of an easement as a whole to determine the parties’ intentions and to
carry out the purpose behind the easement’s creation.  DeWitt Cnty. Elec.
Coop., Inc. v. Parks, 1 S.W.3d 96, 101 (Tex. 1999).

            Any
ambiguities in the language or parties’ intent are construed against the drafting
party, and we adopt the interpretation that is the least burdensome to the
non-drafting party.  Houston Pipe Line Co. v. Dwyer, 374 S.W.2d 662, 665
(Tex. 1964); Boerschig v. Sw. Holdings, Inc., 322 S.W.3d 752, 760 (Tex.
App.—El Paso 2010, no pet.); CenterPoint Energy Houston Elec. LLC v.
Bluebonnet Drive, Ltd., 264 S.W.3d 381, 388–89 (Tex. App.—Houston [1st
Dist.] 2008, pet. denied).  “A latent ambiguity arises when a contract which is
unambiguous on its face is applied to the subject matter with which it deals
and an ambiguity appears by reason of some collateral matter.”  Nat’l Union
Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc., 907 S.W.2d 517, 520
(Tex. 1995).  If the contract is ambiguous, the court must “determine the true
intentions of the parties, for that will resolve the ambiguity.”  Fox v.
Parker, 98 S.W.3d 713, 719 (Tex. App.—Waco 2003, pet. denied).  “This
determination involves fact issues.”  Id.

            When
an easement has only one reasonable interpretation after applying the rules of
contract construction, we must construe it as a matter of law.  Marcus Cable,
90 S.W.3d at 700.  Because the easement does not specifically address gates or
cattle guards, we must look to the terms of the reservation and give them their
ordinary and generally accepted meaning.

            Both
parties’ arguments turn on the interpretation of the phrase “free,
uninterrupted and unobstructed.”  Free is defined as “not subject to the
constraint of another”; “unburdened.”  Black’s
Law Dictionary 734 (9th ed. 2009).  An interruption is defined as a
“break in the period of possession of land.”  Id. at 896.  An
obstruction is defined as “something that impedes or hinders.”  Id. at 1183.

            The
reservation of the easement appears to be unambiguous on its face.  It is to
remain free of all obstructions, without breaking the flow of Caldwell’s
ingress and egress.  Yet, an ambiguity arises when the reservation is applied
to the subject matter of the actual easement and the collateral matter of
McKenna’s use of his property for cattle.

            The
summary judgment evidence is conflicting; however, we take as true all evidence
favorable to the nonmovant.[1] 
The summary judgment evidence shows that, at the time of the partition deed,
there was already a gate at the southern entrance of the easement.  Most cattle
guards would not be considered an “interruption” or an “obstruction,” and
Caldwell acknowledged that the cattle guard was never an issue.  Yet, Caldwell
filled in the cattle guard that McKenna used to keep his cattle from roaming
onto Caldwell’s property.  The trial court’s final judgment prohibiting any and
all obstructions across the easement could be read to include cattle guards,
leaving McKenna no way to maintain his preexisting use of the property: raising
cattle without the cattle roaming onto Caldwell’s property or the public road.

            It
is a question of fact whether, when the easement was created, the parties
intended the access easement to be free of gates or cattle guards.  See Reaves
v. Lindsay, 326 S.W.3d 276, 282 (Tex. App.—Houston [1st Dist.] 2010, no
pet.) (stating that, where the language of an express easement does not
specifically address the issue of whether gates and cattle guards can be
installed across the easement, the rights of the dominant estate must be
balanced against the burden to the servient estate).[2] 
The summary judgment evidence reflects that the easement was entered into with
knowledge that McKenna was raising cattle with Caldwell.  Because Caldwell
drafted the partition deed, including the easement language, it should be
construed against him.

            Caldwell
urges us to determine his easement rights as a matter of law, but “[w]hether
the grantee of a right of way is entitled to a way unobstructed by gates or
bars depends upon the terms of the grant, the provision for which it was made,
the nature and situation of the property, and the manner in which it has been
used.”  Arden v. Boone, 221 S.W. 265, 266 (Tex. Comm’n App. 1920,
holding approved); see Gerstner v. Wilhelm, 584 S.W.2d 955, 958
(Tex. Civ. App.—Austin 1979, writ dism’d); Carleton v. Dierks, 203
S.W.2d 552, 556–57 (Tex. Civ. App.—Austin 1947, writ ref’d n.r.e.); Burns v.
McDaniel, 158 S.W.2d 826, 827 (Tex. Civ. App.—Eastland 1942, no writ).  While
Caldwell argues that any obstruction is prohibited by the terms of the easement,
McKenna points out that Caldwell himself installed a gate across the easement and
that the manner in which McKenna uses the land has not changed since Caldwell
reserved his easement.

            McKenna
recognizes that the owner of the servient estate may not interfere with the use
of an easement for the purpose for which it was granted.  Ferrara v. Moore,
318 S.W.3d 487, 490 (Tex. App.—Texarkana 2010, pet. denied).  But, he points
out that Texas law also holds that the holder of an easement may not
unreasonably interfere with the use of the servient estate.  Coleman v. Forister,
514 S.W.2d 899, 903 (Tex. 1974); Reaves, 326 S.W.3d at 282; Ferrara,
318 S.W.3d at 490; Lamar Cnty. Elec. Coop. Ass’n v. Bryant, 770 S.W.2d
921, 923 (Tex. App.—Texarkana 1989, no writ); San Jacinto Sand Co. v. Sw.
Bell Tel. Co., 426 S.W.2d 338, 345 (Tex. Civ. App.—Houston [14th Dist.]
1968, writ ref’d n.r.e.).  Therefore, “[a]s a general rule, the questions of
whether the use of an easement by the dominant estate is reasonably necessary
and convenient and of whether the use is as little burdensome as possible on
the servient estate are questions of fact for the trial court or jury.”  Reaves,
326 S.W.3d at 282.

            In a
recent appeal from the grant of summary judgment, the Seventh Court of Appeals
applied a balancing test where the express terms of the easement did not
address the matter of gates.  Greenwood v. Lee, No. 07-11-00404-CV, 2012
WL 4475441, at *11 (Tex. App.—Amarillo Sept. 28, 2012, no pet. h.).  There, the
dominant estate owners failed to show that their claim to gate-free passage
over the easement was reasonably necessary and convenient and that their
claimed right placed the least possible burden on the servient estate.  Id. at
*11–12.  The court arrived at its decision after considering the nature of the
properties at issue and the purpose of the easement.  Id. at *11 (citing
Gerstner, 584 S.W.2d at 958).

            We
conclude that a question of fact exists as to whether, when the easement was
created, the parties intended the access easement to be free of gates or cattle
guards.  What may be considered a proper and reasonable use, as well as
what may be necessary to the easement holder’s beneficial use and enjoyment, is
a question of fact.  Magnolia Pipeline Co. v. McCarter, 52 S.W.2d 663,
666 (Tex. Civ. App.—Beaumont 1932, no writ); Murray v. Dickson, 123 S.W.
179 (Tex. Civ. App.—Dallas 1909, no writ).

            Summary
judgment is inappropriate where, based on the record, reasonable jurors could
reach different conclusions as to a particular material fact.  Whether a gate
or cattle guard across the northern terminus of the easement is permitted, when
Caldwell had already installed a gate across the southern terminus, is a
question of fact.  Whether the language of the easement allows for a gate or
cattle guard depends on the intent of the parties.  There is evidence that a
gate existed at the time the easement was granted—one installed by Caldwell. 
The parties’ intent is clearly ambiguous.  Because Caldwell did not meet his
burden of showing that there were no  genuine issues of material fact and that
he was entitled to judgment as a matter of law, summary judgment was
inappropriate.  The first point of error is sutained.  Accordingly, we need not
reach the merits of McKenna’s second or third point of error.  Tex. R. App. P. 47.1.

This
Court’s Ruling

            The
judgment of the trial court is reversed, and the cause is remanded to the trial
court for further proceedings consistent with this opinion.

            

            

                                                                                    TERRY
McCALL

                                                                                    JUSTICE

 

October 25, 2012

Panel[3]
consists of: Wright, C.J.,

McCall, J., and Hill.[4]









[1]We review all the summary judgment evidence in favor of
the nonmoving party, McKenna.  Joe v. Two Thirty Nine Joint Venture, 145
S.W.3d 150, 157 (Tex. 2004) (stating that the court reviews a summary
judgment de novo and takes “as true all evidence favorable to the nonmovant”).

 





[2]Cf. Knight v. Buckbriar, No. 04-01-00539-CV, 2002 WL 1285292 (Tex. App.—San
Antonio June 12, 2002, no pet.) (mem. op., not designated for publication)
(holding as a matter of law that the easements in question were unambiguous
where they specifically stated no barriers of any kind were to be erected,
other than the two gates already in existence, that would interfere with the
free flow of access).





[3]Eric Kalenak, Justice, resigned effective September 3,
2012.  The justice position is vacant pending appointment of a successor by the
governor or until the next general election.

 





[4]John G. Hill, Former Chief Justice, Court of Appeals,
2nd District of Texas at Fort Worth, sitting by assignment.